CCC:PGS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

23 CV 1648 (JMA)

- against -

ADAM S. KAPLAN and DANIEL E. KAPLAN,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NOTICE OF MOTION

PLEASE TAKE NOTICE that upon the accompanying Government's Memorandum of Law in Support of Application To Intervene and To Stay Civil Proceedings, the United States will move this Court on a date and time to be designated by the Court, before the Honorable Joan M. Azrack, at the United States Federal Courthouse, 100 Federal Plaza, Central Islip, New York 11722, pursuant to Rule 24 of the Federal Rules of Civil Procedure, for intervention for the purpose of seeking a stay of civil proceedings and for such other relief as the Court deems appropriate.

Dated:   Central Islip, New York
           September 7, 2023

Respectfully submitted,

BREON PEACE
United States Attorney

_____/s/_____
Adam R. Toporovsky
Paul G. Scotti
Assistant U.S. Attorneys
(631) 715-7836 (Scotti)

Cc:    Clerk of the Court (JMA)
         All Counsel (By ECF)

CCC:PGS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

                   - against -

ADAM S. KAPLAN and DANIEL E. KAPLAN,

                       Defendants.

23 CV 1648 (JMA)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION TO INTERVENE AND TO STAY CIVIL PROCEEDINGS

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ADAM R. TOPOROVSKY
PAUL G. SCOTTI
Assistant U.S. Attorneys
(Of Counsel)

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in support of its motion to intervene in the above-captioned civil case (the "Civil Case") and to stay civil proceedings because of the pendency of the parallel criminal case, <u>United States v. Adam S. Kaplan and Danel E. Kaplan</u>, 23 CR 292 (JMA) (the "Criminal Case"), which has been filed in this district, and a related, ongoing grand jury investigation. The same underlying facts are at issue in both the civil and the criminal matters. The government has contacted retained counsel for the defendants Adam Kaplan and Daniel Kaplan (Morrison Cohen LLP and Sher Tremonte LLP, respectively) requesting their position with respect to the instant motion but no response has been provided.[1] The government has also consulted with the U.S. Securities and Exchange Commission ("SEC"), which does not oppose the entry of the requested order to stay the Civil Case.

A stay of proceedings is appropriate because the government's motion is timely and the same alleged fraudulent schemes are at issue in both the Civil and Criminal Cases. Moreover, a stay of proceedings is necessary, as defendants Adam Kaplan and Daniel Kaplan (hereinafter, the "Kaplans" or the "defendants") should not be permitted to use civil discovery in the Civil Case to avoid the restrictions on criminal discovery that would otherwise pertain to them

---

[1] On September 5, 2023, the government spoke by telephone to counsel from Sher Tremonte LLP who stated that he would advise the government of their position after speaking with his client Daniel Kaplan. Shortly thereafter, the government emailed counsel for both defendants notifying them of its intent to file the instant motion and requesting their positions. Counsel from Morrison Cohen responded on September 5, that he would advise as to his client Adam Kaplan's position after further consideration. On September 6, 2023, the government sent a follow-up email requesting the defendants' positions. To date, the government has not received a response from counsel for Adam Kaplan or Daniel Kaplan. Because the defendants have made discovery requests in the Civil Case requiring the production of discovery on Monday, September 11, 2023 with depositions scheduled to commence on Tuesday, September 12, 2023, the government could no longer wait for the defendants' positions.

in the Criminal Case.   A stay is also necessary to preserve the secrecy of the ongoing grand jury proceedings, and could promote judicial economy.   Accordingly, the United States respectfully requests that the Court: (1) permit the government to intervene pursuant to Federal Rule of Civil Procedure 24; and (2) order, pursuant to the Court's inherent power, that civil proceedings in the Civil Case be stayed until the conclusion of the related Criminal Case and the ongoing grand jury investigation.

The government further moves this Court for an immediate stay of all discovery in the Civil Case, including depositions that are currently scheduled.   The government has recently learned that Sher Tremonte has served subpoenas on at least six victims, whose identities are known to the government, to appear for depositions in the Civil Case.   The first depositions are scheduled for Tuesday, September 12, 2023, and Wednesday September 13, 2023.   Additionally, the SEC has advised that the defendants have served interrogatories and a request for discovery in the Civil Case and the SEC's response is due on Monday, September 11, 2023.   Accordingly, in order to prevent the defendants from improperly obtaining discovery for the Criminal Case while the instant motion is pending, the government respectfully requests that the Court enter an interim order granting an immediate stay of all discovery in the Civil Case until the motion to intervene and stay the Civil Case has been fully briefed and decided.

## FACTUAL BACKGROUND

I.    The Civil Case

On March 3, 2023 (the "SEC Complaint") (Docket No. 1), the SEC filed a complaint against the defendants.   The complaint alleges that, from at least May 2018 through October 2022, the Kaplans engaged in several different fraudulent activities to misappropriate more than $5 million from at least 60 of their investment advisory clients.   SEC Complaint at 1.

Specifically, the SEC Complaint alleges, <u>inter</u> <u>alia</u>, that the Kaplans "overcharged clients for advisory fees by fraudulently inflating the fee amounts in the clients' advisory agreements, without the clients' knowledge or consent, so they could collect higher fees than the clients had agreed to pay." <u>Id</u>. The SEC Complaint further alleges that the Kaplans misappropriated clients' funds by fraudulently applying charges to client credit cards and bank accounts for, among other things, purported investments or additional advisory fees to which the Kaplans were not entitled. <u>Id</u>. at 2. The Kaplans then used the ill-gotten client funds for their personal benefit and to repay other certain clients who complained about the unusual account activity. <u>Id</u>. The Kaplans also "made misrepresentations, falsified documents, and made Ponzi-like payments to clients to conceal their fraudulent activities." <u>Id</u>.

## II.   The Criminal Case

On July 18, 2023, a federal grand jury sitting in the Eastern District of New York returned an indictment charging the defendants with, <u>inter</u> <u>alia</u>, the same conduct alleged in the SEC Complaint. 23-CR-292 (JMA) Dkt. No. 1. Specifically, the indictment alleges that in or about and between May 2018 and October 2022, the Kaplans, while being employed as investment advisors by a Financial Services Firm whose identity is known to the government, "defrauded at least 50 clients of the Financial Services Firm, including some elderly and disabled victims, of at least $5 million." <u>Id.</u> ¶ 6. The Kaplans defrauded their clients in several ways. <u>Id.</u> ¶ 13. First, the Kaplans caused the victims to be overbilled for advisory fees by fraudulently inflating the fee amounts in the clients' written advisory agreements. <u>Id.</u> ¶ ¶ 13, 15. Second, "the Kaplans used access to the victims' personal information to misappropriate over $4 million from the victims through various fraudulent means, including through electronic charges that were fraudulently applied to the victims' credit cards and bank accounts[,]" and forging checks from the victims'

3

bank accounts and depositing them into their own bank accounts. <u>Id.</u> ¶ 16. "Finally, the Kaplans created false documents and made material misrepresentations to the victims to conceal the misappropriations of the victims' funds." <u>Id.</u> ¶ 20. In some instances, to conceal their criminal activity, the Kaplans paid back victims who complained about missing funds by using funds that were misappropriated from other victims. <u>Id.</u> ¶ 21.

ARGUMENT

POINT ONE

<u>INTERVENTION IS APPROPRIATE</u>

I.    <u>Applicable Law</u>

Rule 24 of the Federal Rules of Civil Procedure provides that a party may intervene in a civil action either as a matter of right or on a permissive basis. Either avenue justifies intervention by the United States in the present action. <u>See</u> <u>In re Air Cargo Shipping Servs. Antitrust Litig.</u>, M.D.L. No. 1775, 06-MD-1775, 2010 U.S. Dist. LEXIS 128950, at *58, 62-63 (E.D.N.Y. Dec. 3, 2010) (granting motion, noting that "[w]hether as of right under Rule 24(a) or by permission under Rule 24(b), courts in the Second Circuit have routinely granted motions made by prosecuting authorities seeking to intervene in civil actions for the purpose of obtaining stays of discovery").

Federal Rule of Civil Procedure 24(a) provides that a person may intervene as of right when the applicant:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Intervention is appropriate under Federal Rule of Civil Procedure 24(a) if

4

the application is timely, the party has an interest in the transaction, the action may impede the party's ability to protect that interest, and the party's interests are not adequately represented in the action.  See Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006); Cascade Natural Gas Co. v. El Paso Natural Gas Co., 386 U.S. 129, 132-36 (1967) (permitting State of California to intervene under Rule 24(a) in antitrust case to protect state's "interest" in promoting competition in California).

Additionally, a court may permit intervention when an applicant files a timely motion and has a "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(2).  Intervention under Federal Rule of Civil Procedure 24(b) is "wholly discretionary with the trial court."  United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978).  In exercising their discretion, courts consider the nature and extent of the intervener's interests, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, and whether the interests of the proposed intervener are adequately represented by the existing parties.  See Berroyer v. United States, 282 F.R.D. 299, 302-03 (E.D.N.Y. 2012); Miller v. Silbermann, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993).

II.    Discussion

Allowing the United States to intervene in this case under Rule 24 is appropriate. The United States' motion is timely, as it is being filed before the SEC has responded to the defendants' first set of interrogatories and request for production of documents, and prior to depositions in the Civil Case.  Additionally, no party has suffered prejudice.  Moreover, as demonstrated above, the same alleged fraudulent schemes are at issue in both the Civil Case and the Criminal Case.

When government prosecutors have advised courts that they are conducting criminal prosecutions or investigations of individuals involved in a pending civil action, the courts have regularly permitted the government to intervene to request a stay of proceedings or discovery in the ongoing civil cases.   See, e.g., SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (permitting government intervention to seek stay of civil discovery in SEC action pending completion of a criminal investigation involving the same underlying facts was not an abuse of discretion under either Rule 24(a) or Rule 24(b)); see also SEC v. Doody, 186 F. Supp. 2d 379, 381 (S.D.N.Y. 2002); Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 8 (D. Conn. 2002); SEC v. Downe, No. 92 Civ. 4092 (PKL), 1993 WL 22126 at *11 (S.D.N.Y. Jan. 26, 1993); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992).

Intervention is warranted as a matter of right under Rule 24(a)(2) in light of the strong interest of the government and the public in the enforcement of criminal laws.   See, e.g., Cascade Natural Gas Co., 386 U.S. at 132-36 (permitting intervention as of right by State in antitrust proceedings because of public interest in effective competition); SEC v. Realty & Improvement Co., 310 U.S. 434, 458-60 (1940) (SEC should have been permitted to intervene in bankruptcy proceeding because resolution of that proceeding might "defeat the public interests which [the SEC] was designated to represent").   That interest may be substantially impaired if civil proceedings were allowed to continue in this matter before the resolution of the Criminal Case, as explained further in Point II below.

Courts have specifically recognized that the government "has a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter."   Chestman, 861 F.2d at 50; see Morris v. Am. Fed'n of State, County & Mun. Employees, No. 99 Civ. 5125 (SWK), 2001 WL 123886 at

6

*1 (S.D.N.Y. Feb. 9, 2001) (permitting the District Attorney to intervene in civil action to request stay of discovery); Bd. of Governors of the Fed. Reserve Sys. v. Pharaon, 140 F.R.D. 634, 638 (S.D.N.Y. 1991) (same); First Merchs. Enter., Inc. v. Shannon, No. 88 Civ. 8254 (CSH), 1989 WL 25214 at *2-*3 (S.D.N.Y. Mar. 16, 1989) (allowing the United States Attorney to intervene in a civil action).

Intervention is also warranted as an exercise of this Court's discretionary authority because the defendants are charged with engaging in essentially the same schemes in the Criminal Case. Indeed, there is substantial overlap in the core factual allegations underlying this action and the factual questions that likely will be resolved in the Criminal Case – namely, whether the defendants charged in both the Civil and Criminal Cases schemed to defraud their victims by causing them to be fraudulently overbilled for advisory fees, used the victims' personal information to misappropriate over $4 million from the victims for their personal benefit, and created false documents and made material misrepresentations to victims to conceal their criminal activities. The United States seeks only a stay of the proceedings, and its intervention will not alter the parties' respective positions. In fact, the criminal prosecutions may benefit the civil parties, by bringing out facts relevant to the Civil Case and streamlining the ensuing litigation. Accordingly, this Court should permit the government to intervene.

<u>POINT TWO</u>

<u>STAY OF CIVIL PROCEEDINGS SHOULD BE GRANTED</u>

I.    <u>Applicable Law</u>

District courts have the inherent authority to stay their own civil proceedings. <u>See</u> Landis v. N. Am. Co., 299 U.S. 248 (1936). A stay of proceedings and discovery in a civil case is particularly appropriate when, as here, a criminal indictment has been filed. <u>See</u> <u>Doody</u>, 186

F. Supp. 2d at 381 ("Once an indictment has been returned, the government often moves for and frequently obtains relief preventing a criminal defendant from using parallel civil proceedings to gain premature access to evidence and information pertinent to the Criminal Case."); Twenty First Century Corp., 801 F. Supp. at 1011 ("[C]ourts are more likely to grant [a stay] when an indictment has already been issued.").  Pursuant to this discretionary authority, courts may decide to stay civil proceedings, postpone civil discovery, or impose protective orders.  See SEC v. Dressler, 628 F.2d 1368, 1375 (D.C. Cir. 1980).

In making the determination whether to exercise its discretion to stay the civil proceedings, the Court should balance the following considerations:

> (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest.

Twenty First Century Corp., 801 F. Supp. at 1010 (citations and quotations omitted).  As described below, each of these factors weighs in favor of granting a stay of civil proceedings in the Civil Case until the conclusion of the criminal prosecutions.

II.    Discussion

A.    A Stay Will Prevent Unfair Prejudice to the Government

A stay of the civil proceedings is appropriate to prevent the defendants from taking unfair advantage of broad civil discovery rules in the Civil Case to avoid the restrictions that would otherwise pertain to them as defendants in the Criminal Case.  The Second Circuit Court of Appeals has recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter."  Chestman, 861 F.2d at 50.  The vastly different

rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings. See, e.g., Bridgeport Harbour Place I, LLC, 269 F. Supp. 2d at 10 ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case."); Twenty First Century Corp., 801 F. Supp. at 1010 (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"); SEC v. Beacon Hill Asset Management LLC, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in context of request for civil stay of discovery due to pending criminal investigation, "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases") (Kaplan, J,); Phillip Morris Inc. v. Heinrich, 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without stay, targets "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); Governor of the Fed'l Reserve System v. Pharaon, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery") (citations omitted). Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. See, e.g., Fed. R. Crim. Proc. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. See 18 U.S.C. § 3500; Fed. R. Crim. Proc. 16(a). Likewise, the criminal discovery rules require production only of those documents which the government intends to offer at trial, or which are material to the defense. See Fed. R. Crim. Proc. 16(a)(1)(C).

Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized policy of restricting the flow of information to defendants. Three major reasons regularly identified by the courts in justifying narrow criminal discovery are that: (1) the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence; (2) the revelation of the identity of prospective witnesses may create the opportunity for intimidation; and (3) the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.   Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988); see also Campbell v. Eastland, 307 F.2d 478, 487 n.12 (5th Cir. 1962); Raphael v. Aetna Cas. & Sur., 744 F. Supp. 71, 75 (S.D.N.Y. 1990); Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 381 (D.D.C. 1977).

Here, discovery by the defendants of the notes of interviews of witnesses, or the taking of such witnesses' depositions, would undoubtedly provide information to the defendants not otherwise discoverable in the Criminal Case, and shed light on the strategies and progress of the ongoing grand jury investigation as well as any resulting prosecution, thus enhancing the defendants' ability to manufacture evidence or tailor testimony, and otherwise severely hamper the government's ability to conduct an orderly investigation and prosecution.  As previously noted, the SEC has a deadline of Monday September 11, 2023, to respond to a series of document requests and interrogatories already served by defendants' counsel.  The discovery requests clearly demonstrate that the Kaplans are improperly seeking to obtain, via civil discovery, materials that they are not entitled to at this time in the Criminal Case.  For example, in the "Defendants' First Set of Interrogatories and Request for Production of Documents to Plaintiff,"

dated August 11, 2023 (hereinafter, the "Discovery Request" and attached hereto as Exhibit A), Interrogatory #1 states, "Identify all persons who witnessed, were present at, or have knowledge of the events and allegations described in the Complaint, including the home and business addresses and telephone numbers of each witness."   The Discovery Request further seeks, <u>inter alia</u>, any and all documents relating to the interviews of fact witnesses conducted by the SEC in the course of the investigation, as well as any notes taken by FBI agents during interviews conducted in the course of the FBI's parallel investigation.   <u>See</u> Exhibit A at p. 5.   As this Court is well aware, witness statements in a Criminal Case are not discoverable under Rule 16 of the Federal Rules of Criminal Procedure and are produced for trial pursuant to 18 U.S.C. § 3500. Furthermore, the names of witnesses and victims in a criminal case are extremely sensitive and not discoverable at this point in the Criminal Case.   By serving the Discovery Request, as well as subpoenaing victims to appear for depositions weeks after the Indictment was unsealed, the defendants are clearly attempting to use civil discovery to circumvent the more limited scope of discovery available in a criminal matter.   <u>See</u> <u>Chestman</u>, 861 F.2d at 50.   At the same time that the defendants seek such discovery, they will be entitled to assert their Fifth Amendment right not to provide similar materials to the SEC.

As the government will suffer irreparable prejudice if the defendants are permitted to obtain broad civil discovery – such as deposition and interrogatory discovery – prior to the conclusion of the criminal proceeding, the requested stay should be granted.   Furthermore, to prevent the defendants from improperly obtaining discovery for the Criminal Case while the instant motion is pending, the government respectfully requests that the Court enter an interim order granting an immediate stay of all discovery in the Civil Case until the motion to intervene and stay the Civil Case has been fully briefed and decided.

B.    A Stay Would Serve the Public Interest in Law Enforcement

It is well-settled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities."   Campbell, 307 F.2d at 487; see also In re Ivan F. Boesky Sec. Litig., 128 F.R.D. 47, 48 (S.D.N.Y. 1989).   Indeed, one court has observed that "where both civil and criminal proceedings arise out of the same or related transactions, the government is ordinarily entitled to a stay of all discovery in the civil action until disposition of the criminal matter."   United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

Stays of proceedings and discovery in civil actions reflect a recognition of the vital interests at stake in a criminal prosecution.   See, e.g., United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution").   Stays have been granted to halt civil litigation that threatened to impede criminal investigations which had yet to yield an indictment.   For example, stays have been granted to avoid interference in investigations relating to tax fraud, see, e.g., Campbell, 307 F.2d at 480, insider trading, see, e.g., Chestman, 861 F.2d at 50; Downe, 1993 WL 22126 at *1, insurance fraud, see, e.g., Raphael, 744 F. Supp. at 73, bank fraud, see, e.g., Pharaon, 140 F.R.D. at 639, customs violations, see, e.g., R.J.F. Fabrics, Inc. v. United States, 651 F. Supp. 1437 (U.S. Ct. Int'l Trade 1986), and immigration fraud, see, e.g., Souza v. Shiltgen, No. C-95-3997 MHP, 1996 WL 241824 at *1 (N.D. Cal. May 6, 1986).

A stay is especially appropriate here because there is an indictment filed against the Kaplans – the defendants in the Civil Case – for engaging in the same activities that are the subject

of that lawsuit.   The prosecution in this case will therefore vindicate substantially the same public interest underlying the SEC's civil action, namely preventing financial fraud and the victimization of more individuals.   See, e.g., Volmar Distrib., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (criminal prosecution would serve to advance public interest in preserving integrity of competitive markets).

        C.        The Civil Parties Will Not Be Prejudiced by the Proposed Stay

The SEC, which does not oppose the filing of the requested order, and the defendants, who have yet to take a position, will save significant resources by allowing the Criminal Case to proceed unencumbered by the burdens of civil proceedings and discovery.   As described above, the defendants have been charged in the Criminal Case.   If the defendants are convicted in the Criminal Case, they will in all likelihood not proceed to trial in the Civil Case. See SEC v. Freeman, 290 F. Supp. 2d 401, 405 (S.D.N.Y. 2003) ("It is settled that a party in a civil case may be precluded from relitigating issues adjudicated in a prior criminal proceeding and that the Government may rely on the collateral estoppel effect of the conviction in support of establishing the defendant's liability in the subsequent civil action").

The defendants are also likely to choose to assert their Fifth Amendment rights against self-incrimination in the Civil Case.   As detailed above, it would be unfair to permit them to obtain discovery while not requiring that they provide the same.   A stay would also be likely to streamline discovery for the SEC and any defendants who remain in the Civil Case after the conclusion of the criminal proceedings.   See Twenty First Century Corp., 801 F. Supp. at 1011 (noting that civil discovery due to pending criminal action "may streamline later civil discovery since the transcripts from the criminal case will be available to the civil parties.").   The SEC and

the defendants will therefore benefit from, as opposed to be prejudiced by, a stay of proceedings and discovery in the Civil Case.

      D.    <u>The Court Will Not Be Inconvenienced If It Stays Proceedings in the Civil Case</u>

      The Court will not be inconvenienced as a result of the stay.  To the contrary, as stated above, should the Criminal Case result in convictions, it could greatly streamline the Civil Case.  A stay of civil proceedings is also likely to narrow or eliminate factual issues in the civil litigation.  <u>See</u>, <u>e.g.</u>, <u>In re Grand Jury Proceedings</u>, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); <u>United States v. Mellon Bank</u>, 545 F.2d 869, 873 (3rd Cir. 1976) (affirming a stay of discovery and stating: "[I]t might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case."); <u>Brock v. Tolkow</u>, 109 F.R.D. 116, 119-20 (E.D.N.Y. 1985) (in granting a stay, noting that "the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues.").  All of this will save the Court's time and resources when the civil proceedings stay is lifted at the conclusion of the criminal proceedings.

<u>CONCLUSION</u>

      In sum, the interests of the public, the government, the parties, and the Court strongly weigh in favor of granting this motion for a stay.  In the interests of permitting the government to complete its prosecution in the Criminal Case, as well as the ongoing criminal investigation, the government respectfully requests that its motion for a stay of civil proceedings in the Civil Case be granted.  Based on the forgoing, the government further requests an interim

order granting an immediate stay of all discovery in the Civil Case until the motion to stay the

Civil Case has been fully briefed and decided.

Dated:  Central Islip, New York
        September 7, 2023

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

                                        _____/s/_____
                                        Adam R. Toporovsky
                                        Paul G. Scotti
                                        Assistant U.S. Attorneys
                                        (631) 715-7836 (Scotti)

Cc:   Clerk of the Court (JMA)
      All Counsel (By ECF)

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>      -against-<br><br><br>ADAM S. KAPLAN<br>and DANIEL E. KAPLAN,<br><br>                              Defendants. | **DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF**<br><br>No. 23-cv-01648 (JMA)(ARL) |

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and Local Rule 26.3 of this Court, Defendants Adam S. Kaplan and Daniel E. Kaplan (hereinafter "Defendants") hereby request that Plaintiff U.S. Securities and Exchange Commission ("Plaintiff" or "SEC") serve upon the undersigned attorneys sworn written answers to each of the interrogatories set forth below and produce for inspection and copying the documents requested below at the offices of Morrison Cohen LLP, 909 Third Avenue, 27th Floor, New York, New York 10022 and Sher Tremonte LLP, 90 Broad Street, 23rd Floor, New York, New York 10004, within thirty (30) days after service hereof.

These document requests are continuing. If at any time after service of answers hereto, and prior to the trial of this action, Plaintiff obtains or becomes aware of additional information pertaining to any of these interrogatories or document requests, the disclosure of which may be required pursuant to Rule 26(e) of the Federal Rules, Plaintiff shall, within seven days, and in no event later than seven days before trial, serve upon the undersigned supplemental sworn written answers setting forth such additional information and documents.

## INSTRUCTIONS

1.      If the answer to all or any part of an interrogatory is not presently known or available, include a statement to that effect and furnish any information currently known or available and a description of the source of information that was once known or available that could have been used to respond to the interrogatory.

2.      If any information or document called for by a document request is withheld by reason of a claim of privilege, state with specificity the information required by Local Rule 26.2.

## DEFINITIONS

1.      These definitions incorporate by reference the Uniform Definitions in Discovery Requests set forth in Federal Rule 34(a) and Local Rule 26.3.

2.      Complaint refers to the Complaint filed by the SEC on March 3, 2023.

3.      Defendants refers collectively to all parties named as defendants in the SEC's Complaint.

## INTERROGATORIES

1.      Identify all persons who witnessed, were present at, or have knowledge of the events and allegations described in the Complaint, including the home and business addresses and telephone numbers of each witness.  If you are unable to identify any of the individuals within the meaning of Local Rule 26.3, describe that individual's physical appearance.

2.      Identify all Persons, together with their contact information, who possess, or have custody or control of, Documents or Communications concerning any of the subject matter of the Complaint.

3.      Identify any and all statements, signed or unsigned, recorded electronically or otherwise, prepared by the SEC or any other person that relate directly or indirectly to the events and allegations described in the Complaint.

2

4.     Identify the amount of money each of the individuals listed in the Complaint (*i.e.*, Clients A through F) claim that either or both Defendants misappropriated or fraudulently transferred and the amount of money that any other individual, who is not explicitly described in the Complaint but about whom the SEC may have knowledge, claims that either or both Defendants misappropriated or fraudulently transferred.

5.     Identify each occasion on which any of the individuals listed in the Complaint (*i.e.* Clients A through F) or any other individual, who is not explicitly listed in the Complaint but about whom the SEC may have knowledge, has made any statements or given testimony that relates directly or indirectly to the events and allegations described in the Complaint.

6.     Identify all documents prepared by the SEC or DOJ, or any other person, relating directly or indirectly to the events and allegations described in the Complaint.

## DOCUMENT REQUESTS

1.     Produce all the documents identified in Plaintiff's initial disclosures.

2.     Produce all documents relating directly or indirectly to the events and allegations described in the Complaint that are in your possession, custody or control.

3.     Produce any and all document identified in the Complaint.

4.     Produce any and all non-privileged documents that are part of the SEC's investigation file.

5.     Produce any and all communications between any SEC representative and the individual identified in the Complaint as:

a.     Client A

b.     Client B

c.     Client C

3

d.    Client D

e.    Client E

f.    Client F

6.    Produce any and all notes, including notes concerning communications, taken by any SEC representative concerning the individual identified in the Complaint as:

a.    Client A

b.    Client B

c.    Client C

d.    Client D

e.    Client E

f.    Client F

7.    Produce any and all communications between the SEC and the DOJ concerning the individual identified in the Complaint as:

a.    Client A

b.    Client B

c.    Client C

d.    Client D

e.    Client E

f.    Client F

8.    Produce any and all communications with any other person who the SEC believes retained the services of either Defendant.

9.    Produce any and all notes concerning communications with any other person who the SEC believes retained the services of either Defendant.

10.    Produce any and all communications between the SEC and DOJ concerning any other person who the SEC believes retained the services of either Defendant.

11.    Produce any and all documents relating to the interviews of fact witnesses conducted by the SEC in the course of investigation into the Incident, including but not limited to any transcripts or testimony and accompanying exhibits, any memoranda or notes prepared by SEC staff concerning witness interviews, any notes taken by FBI agents during interviews conducted in the course of the FBI's parallel investigation, and any notes taken by the SEC on the FBI's interview notes.

12.    Produce any and all documents concerning the payment of monies.

13.    Produce all documentation of damages to any of the individuals identified in the Complaint by Defendant and any other individual who may have retained the services of either or both Defendants.

14.    Produce copies of all subpoenas served on any party, or any individual or entity, concerning this litigation.

15.    Produce all documents received in response to any subpoenas served.

16.    Produce any and all documents supporting Plaintiff's allegation that in July of 2021, Firm A terminated Defendants.  *See*, Compl. ¶ 22.

17.    Produce any and all documents supporting Plaintiff's allegation that from May 2018 through July 2021, Defendants caused at least 54 clients to be fraudulently overbilled by Firm A for at least $540,000 in advisory fees." *See*, Compl. ¶ 26.

18.    Produce any and all documents supporting Plaintiff's allegation that "Defendants orally agreed with clients to charge a certain advisory fee, typically 1% or less. Defendants also orally agreed to charge several clients 0%, either on a temporary basis as an introductory fee, or

5

due a personal relationship. However, Defendants fraudulently caused these clients to pay higher advisory fees – ranging from 1.25% to 2.95%." *See*, Compl. ¶ 30.

19.    Produce any and all documents supporting Plaintiff's allegation that after clients signed the Advisory Agreements, "Defendants would insert advisory fees that were higher than what the clients had orally agreed to." *See*, Compl. ¶¶ 32, 33, 34, 35, 36, 27.

20.    Produce any and all documents supporting Plaintiff's allegation that "from at least May 2018 through at least October 2022, Defendants misappropriated at least $4.5 million from clients through various fraudulent devices" and "misappropriated the funds for their personal benefit. *See,* Compl. ¶ 39. *See also id.* at ¶¶ 50, 51.

21.    Produce any and all documents supporting Plaintiff's allegation that "Defendants used their electronic payment accounts, and the credit card and/or bank account information clients had given them, to fraudulently charge many of their clients' credit cards and/or bank accounts for investment advisory fees purportedly owed by the clients to Defendants." *See*, Compl. ¶ 42, 44-46.

22.    Produce any and all documents supporting Plaintiff's allegation that "Defendants used some clients' bank and credit card information to fraudulently charge them for purported investments, including purported investments in stock, that Defendants falsely claimed they would make on the clients' behalf." *See,* Compl. ¶ 47.

23.    Produce any and all documents supporting Plaintiff's allegation that "Defendants used their access to certain client accounts to initiate fraudulent cash transfers out of clients' Custodial Accounts, into the clients' bank accounts, in order to fraudulently obtain funds from the clients through fraudulent electronic charges." *See,* Compl. ¶ 52.

24.    Produce any and all documents supporting Plaintiff's allegation that "Defendants requested draws on the client's [line of credit], transferred the proceeds to that client's bank account, simultaneously initiated a fraudulent electronic debit, credit, or check charge to the client's bank account through an electronic payment account, and then used the clients' funds for their own benefit." *See*, Compl. ¶¶ 58, 60-63.

25.    Produce any and all documents supporting Plaintiff's allegation that Defendant Daniel Kaplan misappropriated funds by altering checks.  *See*, Compl. ¶ 64.

26.    Produce any and all documents supporting Plaintiff's allegation that Defendants created fictious consulting agreements. *See*, Compl. ¶ 66.

27.    Produce any and all documents supporting Plaintiff's allegation that Defendants made Ponzi-like payments to clients using misappropriated funds from other clients.  *See*, Compl. ¶ 66.

28.    Produce any and all documents supporting Plaintiff's allegation that Defendants used a tool called inquiry access and that clients were unaware that Defendants had linked their accounts and that they did not control the full amount of funds that they saw in their account balance.  *See*, Compl.  ¶ 71.

29.    Produce any and all documents supporting the allegation that Defendants falsely changed the address of record for a client's correspondence regarding a client's line of credit.  *See,* Compl. ¶ 73.

30.    Produce the invoices identified in Paragraph 67 of the Complaint.

31.    Produce any files in the SEC's possession, custody, or control from IHT Wealth, Morgan Stanley, Merrill Lynch, or any other financial institution concerning Defendants or Defendants' clients.

32.    All Documents and Communications that you may introduce or rely upon on any motion, or at any deposition, trial, or hearing concerning any of the claims set forth against the Individual Defendants in this Action.

33.    All Documents and Communications constituting or concerning any admissions or statements against interest made by the Individual Defendants, or any other party or person, concerning any subject matter of the claims set forth against the Individual Defendants in the Complaint.

34.    All Documents supporting or concerning the basis for, or computation of, the alleged disgorgement sought in the Complaint.

35.    All Documents supporting or concerning the basis for, or computation of, the alleged civil penalties sought in the Complaint.

Dated:    New York, New York
          August 11, 2023

**MORRISON COHEN LLP**                    **SHER TREMONTE LLP**

By: */s/ Eric M. Creizman*                By:  */s/ Michael Tremonte*
    Eric M. Creizman                          Michael Tremonte
    Joanna Hoodes                             Brachah Goykadosh
    909 Third Avenue, 27th Floor              90 Broad Street, 23rd Floor
    New York, New York 10022                  New York, New York 10004
    Tel.: (212) 735-8640                      Tel: 212.202.2600
    Email: ecreizman@morrisoncohen.com        Email: mtremonte@shertremonte.com

*Attorneys for Defendant Adam S. Kaplan*    *Attorneys for Defendant Daniel E. Kaplan*


**BY EMAIL ONLY**
Ariella O. Guardi, guardia@sec.gov
Marlene B. Key, keym@sec.gov
Steven Klawans, klawans@sec.gov
BeLinda Mathie, mathieb@sec.gov
Kristine Rodriguez, rodriguezk@sec.gov